## Larimer Township Supervisors v. Larimer Township Auditors

*Eugene E. Fike, II,* for plaintiffs.
*Joseph B. Policicchio,* for defendants.

COFFROTH, *P.J.,* February 25, 1977—This is a proceeding in equity raising the following principal legal questions:

1. Whether township auditors may meet to audit the records of the supervisors at the township election house, which is the regular place of meeting of the supervisors, or must meet at the home of the secretary-treasurer where the township records are kept.

2. Whether township auditors may fix the hours of audit, or must accept hours suitable to the township secretary-treasurer.

## FACTS

Prior to March 19, 1976, Paul D. Miller was secretary-treasurer for Larimer Township, a second class township, and had occupied that office for some six or eight years. He was also a township supervisor. During that period, the township records were kept at his home but were audited at the township election house, about two miles away, which was also the regular place of meeting for the supervisors. The secretary-treasurer transported the township books to the election house for each audit meeting, attended the audit and took the books back to his home after each audit meeting. This was apparently an amicable and workable ar-

rangement which caused no difficulty. Usually, the audit meetings were held during the evening hours.

On March 19, 1976, after the audit for the previous fiscal year was completed, Paul D. Miller was replaced as secretary-treasurer by his wife, the husband continuing as a supervisor. The new secretary-treasurer continued to keep the records at her home and to attend the regular meetings of the supervisors at the election house which was and continues to be the regular meeting place of the supervisors.

The problem in the case arises because the auditors want to continue their audit meetings at the election house, and to sit during evening hours, but the secretary-treasurer, and a majority of the supervisors, insist that audit meetings be held at the home of the secretary-treasurer where the records are kept, or, in the alternative, that audit meetings be held during daytime hours, preferably in the morning, at the election house.

The auditors contend that, because of the strained relation and the arm's length relationship between the two bodies involving the ever present possibility of surcharge, they should not be required to work in the home of a supervisor and his wife and should be permitted to work on neutral ground.

## DISCUSSION

### Place of Audit

Audits in townships of the second class are governed by article V (e) sections 545 et seq. of The Second Class Township Code of May 1, 1933, P.L. 103, as amended, 53 P.S. §65545 et seq. Section

545 applies to the place of meeting and provides, in relevant part, as follows:

"The auditors of townships shall meet annually, at the *place of meeting of the supervisors,* on the day following the day which is fixed by this act for organization of the township supervisors; and shall organize by the election of a chairman and secretary, and shall audit, settle, and adjust the accounts of the supervisors, superintendents, roadmasters, treasurer, and tax collector of the township, and fix the compensations for the current year authorized in section 515 hereof. Two auditors shall constitute a quorum. The auditors shall also make an audit of the dockets, transcripts, and other official records of the justices of the peace to determine the amounts of fines and costs paid over or due the township, and the dockets and records of the justices of the peace shall be open to inspection by the auditors for such purpose." (Emphasis supplied.)

Counsel for the supervisors interprets section 545 to require only the initial organization meeting of the auditors to be held at the place of meeting of the supervisors, and to leave open the place where subsequent meetings may be held; and further contends that meetings for audit of township records should be held where the records are kept in keeping with the policy recommendations of the Pennsylvania State Association of Township Supervisors.

Counsel for the auditors interprets section 545 to direct that all audit meetings, except those for audit of the justice of the peace records, be held at the regular place of meeting of the supervisors.

From our study of the law, we concur essentially with the position of the auditors. Audit meetings,

except for the records of the justice of the peace, should be held at the regular place of meeting of the supervisors. We do not consider that the statutory provision is so mandatory as to render void audits held at some other place, but rather as a directory provision which should be followed in the absence of good cause for selecting another place. In the present case, we see no legal basis for requiring that the township audit be held at the home of the secretary-treasurer. Although we recognize that such a procedure has some merit, there is no real obstacle to transporting the records to and from the election house as was done in prior years.

There is, of course, some inconvenience to the secretary-treasurer in this requirement, but it is a burden which goes with the office. It is her duty to take the books to the auditors at the time and place fixed, and to submit to examination concerning them, but the period of time during which her presence before the auditors is required for that purpose should be limited to the time reasonably necessary to accomplish the task. The secretary-treasurer need not remain at the audit meeting beyond that period and if she elects to leave before the meeting is over, the auditors must return the books to her home after the meeting. We consider that a fair and practical resolution of the logistical problems involved.

## Time of Audit Meetings

There is nothing in the code specifying meeting times. In such cases, the law implies reasonable times. We consider as reasonable both normal business hours during the week, and evening

hours. It is customary for local governmental bodies in this county, many of whose members work elsewhere for their livelihood, to meet during the evening.

Moreover, the board of auditors has the inherent power, as does any other board or agency of government, to fix its own hours. The board of auditors is an independently elected body having quasi-judicial powers over those whose records it audits, and is not subject to the command of any such other officer or agency. So long as its hours are reasonable and within statutory limitations, and so long as its other powers are reasonably exercised, the court will not interfere with its discretion.

## Local Governmental Cooperation

One of the reasons that statutes and codes governing local governmental operations refrain from specifying details of places and hours and similar items of procedure, is that the legislature and the judiciary count upon the customary ability of people to cooperate in the public interest. Unfortunately, that cooperative relationship has broken down between these parties. We recognize that such breakdowns in human relationships will occur from time to time, and that courts must in such cases lay down rules of conduct. However, we urge the parties in this case to make a sincere effort to re-establish a cooperative relationship so that the public business will be attended to with the least possible prejudice and distraction.

## DECREE

Now, February 25, 1977, the preliminary injunc-

tion is dissolved and the complaint is dismissed at the cost of plaintiffs.

Unless exceptions are filed sec. reg. within 20 days, this decree shall be entered as the final decree on praecipe.